Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK  99701
Phone: (907) 452-4377
Fax:     (907) 451-7802
E-mail:  kcovell@gci.net

Attorney for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA AT FAIRBANKS

GREGG CONITZ,

        Plaintiffs,

   vs.

TECK ALASKA INCORPORATED,

        Defendant.      Case No.

### COMPLAINT

COMES NOW Plaintiff, Gregg Conitz, by and through counsel, THE LAW OFFICE OF KENNETH L. COVELL, and for his Complaint alleges as follows:

1. At all relevant times, Gregg Conitz was an adult resident of Alaska.

2. Teck Alaska Incorporated is a corporation organized under the laws of the state of Alaska, and at all relevant times, was doing business in Alaska.

3. Teck Alaska Incorporated is the successor to Teck Cominco Alaska, Inc. which is the successor to Cominco Alaska Incorporated.

*Complaint*

Case 4:09-cv-00020-RRB   Document 1   Filed 04/29/09   Page 1 of 22

4.  In the 1982 agreement between Cominco Alaska Incorporated, a predecessor in interest to Teck Alaska Incorporated had a policy, the goal of which is, "to the extent feasible, one hundred percent (100%) of [its] employees [at the mine] shall be Natives."

5.  In situations where there is not a qualified Alaska Native/NANA Shareholder, the 1982 Operating Agreement states that "such employment shall be offered first to available Natives of the NANA Region who are qualified for the job, or if none are qualified…who meet job-related standards of fitness and ability which indicate that with a reasonable amount of on-the-job training…the person could satisfactorily perform the job."

6.  Natives of the NANA Region entitled to the preference means the stockholders of NANA whose stock carries voting rights, and the descendants and spouses of such Alaska Native/NANA Shareholders.

7.  This Alaska Native/NANA Shareholder preference is continued to this day with the substitution of the word "shareholder" for the word "Native."

8.  Teck Alaska Incorporated has a policy of granting an employment preference to Alaska Native/NANA Shareholders. Teck has admitted that this preference exists, at a minimum, to the extent that where two applicants are equally qualified for a job and one is an Alaska Native/NANA Shareholder, the Alaska Native/NANA Shareholder shall get preference. Teck has also said that this policy is not written down; however, it is "well known around the property".

*Complaint*

9. Gregg Conitz is white and of European national origin.

10. Gregg Conitz began mining in 1979 at the age of eighteen and currently has about twenty-eight years of experience in the business. He worked in a small base metal mill and underground mine in Idaho and a fairly large scale surface gold dredging operation in Nome, Alaska before his current employment at Red Dog Mine. Gregg Conitz has worked in various positions with Defendant.

11. Gregg Conitz contacted Cominco Alaska Inc. about employment at Red Dog Mine prior to its start up in 1989. By 1990, due to the Alaska Native/NANA Shareholder hiring preference at the mine, he had been unsuccessful in obtaining a job in the Mine Operations Department, despite his mining and equipment operating experience. He then sought other openings and was finally offered a job in the Mill Maintenance department as a Level IV Millwright in the Mill Oiler position starting April 9, 1990. On July 2, 1990, he was promoted to Level VI Millwright in the position of Preventative Maintenance Technician.

12. On September 1, 1991, Gregg Conitz applied for a transfer to the Mine Operations Department through Ron McLean, who was the Human Resources Superintendent at the time. Over the next four years he sought a transfer through Ron McLean and Ted Zigarlick, the Mine Operations Foreman, and was turned down numerous times for Mine Operator positions, which were subsequently filled by Alaska Native/NANA Shareholders with no mining experience and little or no equipment operating experience.

*Complaint*

13. On June 6, 1995, the Mine Superintendent Mr. Jim Greenhall offered Gregg Conitz a position in Mine Operations as a Level III Operator. Mr. Greenhall assured Gregg Conitz that he would be allowed to progress within the Mine Operations Department on a fair and equal basis without a hiring preference given to Alaska Native/NANA Shareholders.

14. During May 1999, Gregg Conitz submitted a written application for the Acting Supervisor position. On August 10, 1999, the Mine Operations Department Coordinator told Gregg Conitz that Conitz was the best applicant for the Acting Supervisor position and would begin receiving supervisory training.

15. On September 22, 1999 Gregg Conitz was assigned to Level V Operator position at the Mine Operations Department with Cominco Alaska, Inc.

16. The week of December 9, 1999 was the first week Gregg Conitz served as the Acting Supervisor, and on December 20, 2000, he was assigned to the Level VI Operator position.

17. In January of 2003 there was an opening for a permanent Mine Operations Supervisor. Leo Thomas, an Alaska Native/NANA Shareholder, was appointed as a "temporary" Supervisor in January 2003, and given the full time appointment in July of that year. Thomas had not previously served as an Acting Supervisor; and after he started supervising, Gregg Conitz was excluded from Acting Supervising and was never told by management or given any reason why. Conitz did not complain or contest the decision at the time as he thought he would have a better chance for the next opening if he kept quiet.

*Complaint*

18. In June 2004, Leo Thomas died in a boating accident. From July to November 2004, Mr. Kells, the Mine Operations Foreman, evaluated the applicants for the Mine Operations Supervisor position.

19. Mr. Larry Hanna, who is an Alaska Native/NANA Shareholder, Mr. Martin Parillon, who is not an Alaska Native/NANA Shareholder, and Gregg Conitz, who is not an Alaska Native/NANA Shareholder, applied for the Mine Operations Supervisor position.

20. On November 20, 2004, Mr. Larry Hanna, an Alaska Native/NANA Shareholder, was appointed as Mine Operations Supervisor for Teck Cominco Alaska, Inc., even though Gregg Conitz was more qualified for the position.

21. The evening before the announcement of Hanna's selection, Mr. John Kells, the Mine Operations Foreman, told Gregg Conitz that Mr. Kells had selected Conitz as the best candidate for the Mine Operations Supervisor. However, Mr. Kells' decision was overruled by Mr. Rob Scott and/or Mr. Ted Zigarlic [both members of Teck Cominco Alaska, Inc. senior management]. Mr. Kells stated that he was told by Mr. Scott and Mr. Zigarlick that they were required to give a hiring preference to an Alaska Native/NANA Shareholder.

22. Because Gregg Conitz is not an Alaska Native/NANA Shareholder, Conitz was not selected for the Mine Operations Supervisor position. A less qualified Alaska Native/NANA Shareholder was selected for the position.

*Complaint*

23. On November 26, 2004, Gregg Conitz filed a complaint about the supervisor selection process per the dispute resolution process of Teck Cominco Alaska, Inc. His complaint was reviewed by John Kells, Ted Zigarlick and Robb Scott. No satisfactory resolution of Gregg Conitz's complaint was had through the grievance procedure.

24. On February 15, 2005, Gregg Conitz submitted an application for the Mine Trainer position with Teck Cominco Alaska, Inc, after Larry Hanna vacated the position.

25. Mike Baker, an Alaska Native by ancestry and a NANA shareholder, was given the position in May 2005. Mr. Baker had previously worked at Red Dog as a Surface Crew Operator and Surface Crew Trainer but had quit his position several years earlier to pursue other interests. He had no experience in Mine Operations at Red Dog or any other mine and no experience operating most of the equipment used in the mine, at least in a mining type application, and was completely unfamiliar with Mine Operations Department policies, procedures, etc. Mr. Baker was supposed to train people on the day to day operating practices in the pit, but knew nothing of them himself. Mr. Baker quit his position again in 2007.

26. Gregg Conitz was more qualified for the position. Because Gregg Conitz is not an Alaska Native/NANA Shareholder, Conitz was not selected for the Mine Trainer position.

*Complaint*

27. On or about February 8, 2006, Gregg Conitz filed a Complaint of Racial and National Origin Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), regarding the unlawful Alaska Native/NANA Shareholder hiring preference used in favor of Larry Hanna in selecting him for the Mine Supervisor position and Mike Baker in selecting him for the Mine Trainer position. On or about February 23, 2006, the same charge was filed with the Alaska State Commission for Human Rights.

28. During this time, Gregg Conitz was working at Red Dog Mine as an Acting Supervisor.

29. Gregg Conitz was initially assigned to duties as Acting Supervisor in December 1999. After filing complaints with the EEOC and the Alaska State Commission for Human Rights Gregg Conitz was deliberately excluded from his former duties as Acting Supervisor from March 2006 to January 2008.

30. On or about March 2, 2006, Gregg Conitz went for one week of vacation and his regular R&R. When he returned to work on March 23, 2006, he found that he had been replaced as an Acting Supervisor by Charles "Chuck" Barger, an Alaska Native/NANA Shareholder. At this time, Gregg was never told by anyone in management why he had been excluded from Acting Supervising; nor did anyone give him a reason why Mr. Barger had replaced him as Acting Supervisor. At the time, Mr. Barger had approximately five years of mining work experience and no previous supervisory experience.

31. Teck Cominco Alaska, Inc. also opened Mr. Conitz' private letter mail. On April 6, 2006, Gregg Conitz, located at the mine worksite near Kotzebue, received his personal U.S. Postal Mail that had been previously opened and stapled shut. The envelope from counsel, Mr. Kenneth Covell, was addressed to Gregg Conitz' home address, and had been forwarded to the worksite via the Teck Cominco Alaska, Inc. Anchorage office. The mail person at the worksite stated the envelope had arrived from the Teck Cominco Alaska, Inc. Anchorage office opened and stapled shut.

32. Teck Cominco Alaska, Inc. opened Conitz's private letter mail a second time. Between April 6th and April 19th Gregg Conitz received a letter from his attorney, Ken Covell, addressed to him and forwarded to him at the mine site. The flap on the back of the envelope appeared to have been glued shut when it was mailed, but had been carefully opened by separating the glue, and then left open. No note was made on the letter by anyone prior to Conitz receiving it.

33. Mr. Robert Shields, a Mine Department Supervisor at Teck Cominco Alaska, Inc. was Gregg Conitz's Supervisor. On May 10, 2006, Mr. Shields agreed with Gregg Conitz that Conitz was deliberately excluded from the duties of the Acting Supervising position. Mr. Shields informed Gregg Conitz that it had not been Mr. Shield's decision and that he should discuss it with Warren Draper, the Mine Operation's Foreman.

34. On May 17, 2006, Mr. Warren (Butch) Draper, Mine Operations Foreman at Teck Cominco Alaska, Inc., informed Gregg Conitz that Mr. Draper was working on

*Complaint*

getting several Alaska Native/NANA Shareholders, specifically Mr. Baldwin and Mr. Barger, into supervisory positions. Mr. Draper stated that before coming to Red Dog, he had been mandated or directed to promote Alaska Native/NANA Shareholders into trainer, supervisor, and other management positions without regard to anyone of any other race who might be qualified for the same positions. Mr. Draper then stated in reference to Gregg Conitz's EEOC complaint that he would have to question the moral character of "someone who would do something like that".

35. Gregg Conitz was retaliated against by deliberate exclusion from his prior duties in the Active Supervising position for filing the Complaint of Racial and National Origin Discrimination, and the Charge of Discrimination.

36. On or about August 26, 2007, Larry Hanna was promoted to Mine Operations Foreman. This happened less than three (3) years after he was promoted to Mine Operations Supervisor. Mr. Hanna had begun filling in as Mine Operations Foreman while Mr. Draper was off site. This began less than one (1) year after Mr. Hanna received his Supervisor promotion. Mr. Hanna was promoted to Foreman over two other supervisors, Robert Shields and Steve Lozano, who are both not Alaska Native/NANA Shareholders and who both have far more experience than Mr. Hanna.

37. To Gregg Conitz's knowledge, the position of Mine Operations Foreman was never posted for application.

*Complaint*

38. On or about September 1, 2007, Gregg Conitz applied for the opening for Mine Operations Supervisor which had been vacated by Larry Hanna. Jim Baldwin, an Alaska Native/NANA Shareholder, was given the position on or about November 23, 2007. Jim Baldwin was less qualified for the position than Gregg Conitz. Larry Hanna who made the choice of Jim Baldwin for his replacement as Supervisor had only been in the Mine Operations Foreman position since August 26, 2007. Gregg Conitz had been excluded from Acting Supervising since on or about March 23, 2006.

39. On or about January 28, 2008, Mr. Hanna reinstated Gregg Conitz to the Acting Supervising position. By this time, Mr. Baldwin had been promoted to Supervisor and Mr. Barger was firmly established as a full-time Acting Supervisor, and was regularly assigned to these duties. After Conitz was reinstated to Acting Supervisor, Mr. Barger was always given preference for the position when he and Mr. Conitz where on the same shift. During the period of Conitz' exclusion from Acting Supervisor, Marvin Jackson and Darold Sun, both Alaska Native/NANA Shareholders, where used as Acting Supervisors. They also were always given preference for the role of Acting Supervisor when either of them and Mr. Conitz where on the same shift, after Mr. Conitz was reinstated to Acting Supervisor.

40. In 2008, Mr. Shields was terminated. He had health problems that ultimately proved to be fatal. This created another opening for the Mine Operations Supervisor position. Gregg Conitz applied for the position on May 24, 2008. On July, 25, 2008, Mr. Hanna informed Gregg Conitz that the position had been

*Complaint*

Case 4:09-cv-00020-RRB   Document 1   Filed 04/29/09   Page 10 of 22

given to Mr. Barger. When Gregg Conitz inquired about the reason for Mr. Barger's selection, Mr. Hanna's response was, "Chuck was doing a good job." Gregg Conitz then inquired whether there was anything about his performance that rendered him less qualified for the job. Mr. Hanna answered that there was not. Gregg Conitz then inquired whether there was anything about Mr. Barger's performance that made Mr. Barger more qualified for the position. Mr. Hanna did not have an answer. Lastly, Gregg Conitz inquired whether it was the company's policy to select the most qualified person for the job. Mr. Hanna denied any knowledge of such a policy. Mr. Barger was far less qualified for the position than Mr. Conitz. Had Mr. Barger not been assigned to Acting Supervising duty instead of Mr. Conitz, Mr. Barger would not have had any supervisory experience.

41. On or about July 27, 2008, Gregg Conitz wrote a letter of complaint about the Chuck Barger selection as Mine Operations Supervisor over Conitz, to the General Manager, John Knapp. Gregg Conitz received a response on or about July 31, 2008 that stated "whenever you compete against others for a supervisor position with Teck Cominco, it is the best qualified applicant that will win the job."

42. Mr. Knapp also stated in his letter, "the mine's Alaska Native/NANA shareholder hire policy is not about race and is completely legal."

43. As a proximate result of Defendant's, Teck Alaska Incorporated's, unlawful employment actions and inactions, Gregg Conitz has been injured and has suffered past and future economic loss and lost earning capacity, opportunity for further advancement, humiliation, and emotional distress.

*Complaint*

44. On or about August 30, 2008, Gregg Conitz filed a Complaint of Racial and National Origin Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), regarding the unlawful Alaska Native/NANA Shareholder hiring preference used in favor of Jim Baldwin and Charles Barger in selecting them for the Mine Operations Supervisor positions.

45. Gregg Conitz received a right to sue letter, regarding the Baldwin/Barger complaint, from the U.S. Equal Employment Opportunity Commission on or about January 30, 2009.

**COUNT I**
**AS 18.80.220(a)(3)**
**Alaska Civil Rights Act**
Unlawful Employment Action – Race and National Origin Discrimination

46. For his First Cause of Action, Gregg Conitz incorporates the allegations above, and further alleges as follows:

47. It is a violation of the Alaska Civil Rights Act AS 18.80.220(a)(3) for an employer "to print or circulate or cause to be printed or circulated a statement, advertisement, or publication, or to use a form of application for employment or to make an inquiry in connection prospective employment, that express, directly or indirectly, a limitation, specification, or discrimination as to sex, physical or mental disability, marital status, changes in marital status, pregnancy, parenthood, age, race, creed, color, or national origin or an intent to make a limitation,...."

48. Teck has printed or circulated or caused to be printed or circulated, a statement or statements that express, directly or indirectly, a limitation, specification, or discrimination as to race, color or national origin and/or an intent to make such a limitation. Teck's policy of granting a preference to Alaska Native/NANA Shareholders is an unlawful employment practice in violation of the Alaska Civil Rights Act, especially AS 18.80.220(a)(3).

## COUNT II
### Title VII and 42 USC § 1981
### Federal Civil Rights
Unlawful Employment Action – Racial and/or National Origin Harassment /
Hostile Work Environment

49. For his Second Cause of Action, Gregg Conitz incorporates the allegations above, and further alleges as follows:

50. Teck's policy of preferring Alaska Native/NANA Shareholders for promotion is a racial and/or national origin harassment and is an unlawful employment practice and is actionable and a violation of Title VII of the Civil Rights Act and 42 USC § 1981.

## COUNT III
### Title VII
### Federal Civil Rights
Unlawful Employment Action – Race and/or National Origin Discrimination

51. For his Third Cause of Action, Gregg Conitz incorporates the allegations above, and further alleges as follows:

*Complaint*

52. Defendant, Teck Alaska Incorporated's, unlawful employment actions of preferring Jim Baldwin to Gregg Conitz for the position of Mine Operations Supervisor constitutes discrimination on the basis of Race and/or National Origin and violates 42 USC § 2000e-2.

53. Conitz is a member of an ascertainable racial class

54. Conitz was qualified for the position for which he applied.

55. Preferring an Alaska Native/NANA Shareholder over Conitz for the position was an adverse employment action.

56. NANA Shareholder's are entirely comprised or nearly entirely comprised of Alaska Natives racially and the Alaska Native/NANA Shareholder's preference is part of a contract voluntarily entered into between Teck Alaska Incorporated and NANA Regional Corporation.

57. Similarly situated individuals of a different racial background than Conitz's racial background were treated more favorably in the selection process.

58. Defendant discriminated against Conitz in the face of a perceived risk that its actions would violate federal law.

59. The acts of discrimination were intended.

60. The actors within Teck Alaska Incorporated were sufficiently senior in the management structure to be treated as the Corporation's proxy.

*Complaint*

61. To the extent that Teck Alaska Incorporated has promulgated a policy against workplace discrimination, it has an inadequate complaint mechanism and/or does not fairly and adequately enforce the policy.

62. Federal law entitles those in Conitz's position to nominal and/or compensatory damages.

63. Teck Alaska Incorporated's actions also entitle Conitz to an award of punitive damages.

**COUNT IV**

**Title VII**

**Federal Civil Rights**

Unlawful Employment Action – Race and/or National Origin Discrimination

64. For his Fourth Cause of Action, Gregg Conitz incorporates the allegations above, and further alleges as follows:

65. Defendant, Teck Alaska Incorporated's, unlawful employment actions of preferring Charles Barger to Gregg Conitz for the position of Mine Operations Supervisor constitutes discrimination on the basis of Race and/or National Origin and violates 42 USC § 2000e-2.

66. Conitz is a member of an ascertainable racial class

67. Conitz was qualified for the position for which he applied.

68. Preferring an Alaska Native/NANA Shareholder over Conitz for the position was an adverse employment action.

*Complaint*

69. NANA Shareholder's are almost entirely comprised of Native Alaskans racially and the Alaska Native/NANA Shareholder preference is part of a contract voluntarily entered into between Teck Alaska Incorporated and NANA Regional Corporation.

70. Similarly situated individuals of a different racial background than Conitz's racial background were treated more favorably in the selection process.

71. Defendant discriminated against Conitz in the face of a perceived risk that its actions would violate federal law.

72. The acts of discrimination were intended.

73. The actors within Teck Alaska Incorporated were sufficiently senior in the management structure to be treated as the Corporation's proxy.

74. To the extent that Teck Alaska Incorporated has promulgated a policy against workplace discrimination, it has an inadequate complaint mechanism and/or does not fairly and adequately enforce the policy.

75. Federal law entitles those in Conitz's position to nominal and/or compensatory damages.

76. Teck Alaska Incorporated's actions also entitle Conitz to an award of punitive damages.

*Complaint*

## COUNT V

## 42 USC § 1981

## Violation of contract rights

77. For his Fifth Cause of Action, Conitz incorporates the allegations above, and further alleges as follows:

78. Conitz is a member of a class of individuals protected by the Civil rights Act, 42 USC § 1981(a) and (c).

79. Conitz applied and was qualified for a job for which the employer was seeking applicants.

80. Despite Conitz's qualifications, Conitz was rejected for the Mine Operations Supervisor position and Jim Baldwin, an Alaska Native/NANA Shareholder, was selected.

81. After Conitz's rejection, the position remained open and Teck continued to seek applicants from persons of Conitz's qualifications or made the initial choice of applicant from a similarly-situated group of a different class as was Conitz.

82. The employment decision was based on a discriminatory criterion illegal under the Civil Rights Act, *to wit,* race and/or color and/or national origin.

83. Members of a similarly-situated group of a different class were offered the contractual services which were denied to Conitz based upon his and their race and/or color and/or national origin.

*Complaint*

84. Teck's actions impair Conitz's right to be free of discrimination based upon his race, and his right to make and enforce contracts on an equal manner as is enjoyed by other citizens, violates 42 USC § 1981.

## COUNT VI
### 42 USC § 1981
### Violation of contract rights

85. For his Sixth Cause of Action, Conitz incorporates the allegations above, and further alleges as follows:

86. Conitz is a member of a class of individuals protected by the Civil rights Act, 42 USC § 1981(a) and (c).

87. Conitz applied and was qualified for a job for which the employer was seeking applicants.

88. Despite Conitz's qualifications, Conitz was rejected for the Mine Operations Supervisor position and Charles Barger, an Alaska Native/NANA Shareholder, was selected.

89. After Conitz's rejection, the position remained open and Teck continued to seek applicants from persons of Conitz's qualifications or made the initial choice of applicant from a similarly-situated group of a different class as was Conitz.

90. The employment decision was based on a discriminatory criterion illegal under the Civil Rights Act, *to wit,* race and/or color and/or national origin.

*Complaint*

91. Members of a similarly-situated group of a different class were offered the contractual services which were denied to Conitz based upon his and their race and/or color and/or national origin.

92. Teck's actions impair Conitz's right to be free of discrimination based upon his race, and his right to make and enforce contracts on an equal manner as is enjoyed by other citizens, violates 42 USC § 1981.

**COUNT VII**
**AS 18.80.220**
**State Civil Rights**
Unlawful Employment Action – Race and National Origin Discrimination

93. For his Seventh Cause of Action, Gregg Conitz incorporates the allegations above, and further alleges as follows:

94. Defendant's, Teck Alaska Incorporated, unlawful employment actions of preferring Jim Baldwin to Gregg Conitz for the position of Mine Operations Supervisor constitutes discrimination on the basis of race and/or color and/or national origin and violates AS 18.80.220.

95. Conitz is a member of an ascertainable racial class

96. Conitz was qualified for the position for which he applied.

97. Preferring an Alaska Native/NANA Shareholder over Conitz was an adverse employment action.

98. Similarly situated individuals outside Conitz's racial classification were treated more favorably.

99. The acts of discrimination were intended.

100. The actors within Teck Alaska Incorporated were acting within the scope of their employment.

101. Alaska state law entitles those in Conitz's position to nominal and/or compensatory damages.

102. Teck Alaska Incorporated's actions entitle Conitz to an award of punitive damages pursuant to AS 22.10.020(i) and AS 18.80.220.

## COUNT VIII
## AS 18.80.220
## State Civil Rights
Unlawful Employment Action – Race and National Origin Discrimination

103. For his Eighth Cause of Action, Gregg Conitz incorporates the allegations above, and further alleges as follows:

104. Defendant Teck Alaska Incorporated's unlawful employment actions of preferring Charles Barger to Gregg Conitz for the position of Mine Operations Supervisor constitutes discrimination on the basis of Race and/or National Origin and violates AS 18.80.220.

105. Conitz is a member of an ascertainable racial class

106. Conitz was qualified for the position for which he applied.

*Complaint*

107. Preferring an Alaska Native/NANA Shareholder over Conitz was an adverse employment action.

108. Similarly situated individuals outside Conitz's racial classification were treated more favorably.

109. The acts of discrimination were intended.

110. The actors within Teck Alaska Incorporated were acting within the scope of their employment.

111. Alaska state law entitles those in Conitz's position to nominal and/or compensatory damages.

112. Teck Alaska Incorporated's actions entitle Conitz to an award of punitive damages pursuant to AS 22.10.020(i) and AS 18.80.220.

**WHEREFORE,** Gregg Conitz requests the court:

113. Temporarily, preliminarily and permanently enjoin Defendant Teck Alaska Incorporated from discriminating in employment at all of its facilities; and particularly enjoining Defendant from giving preference to Alaska Native/NANA Shareholders and or any other similar such preference, be it rephrased as shareholder and/or Native Alaskan, in regard to hiring and advancement, or otherwise;

114. Order Defendant to advance Gregg to the position to which he is entitled;

115. Award Gregg Conitz nominal damages in addition to other damages proved;

*Complaint*

116. Award Gregg Conitz actual and\or compensatory damages, in an amount to be determined at trial;

117. Award Gregg Conitz punitive damages as permitted by each or any cause of action;

118. Award Gregg Conitz his actual reasonable attorney fees and costs;

119. Award Gregg Conitz prejudgment interest; and,

120. Grant such other relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED this 29th day of April, 2009 at Fairbanks, Alaska.


LAW OFFICE OF KENNETH L. COVELL
Attorney for the Plaintiff, Gregg Conitz
s/ Kenneth L. Covell
712 Eighth Avenue
Fairbanks, Alaska 99701
Phone: (907) 452-4377
Fax: (907) 451-7802
Email: kcovell@gci.net
ABA No. 8611103