Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK 99701
Phone: (907) 452-4377
Fax:     (907) 451-7802
E-mail: kcovell@gci.net

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA AT FAIRBANKS

GREGG CONITZ,

            Plaintiffs,

     vs.

TECK ALASKA INCORPORATED,

            Defendant.

Case No. 4:09-cv-20 RRB

## ANSWER IN OPPOSITION TO
## MOTION FOR SUMMARY JUDGMENT AT DOC. 29
## (RES JUDICATA MOTION)

### I. The Height of Unreason

### INTRODUCTION

       Defendants Teck and NANA asked the Court to dismiss Plaintiff Conitz's claim for discrimination as res judicata. Res judicata does not apply, because Conitz did not receive a full and fair hearing in Conitz I; and res judicata does not apply to unreviewed appellate issues.

       Even if Conitz had a full and fair opportunity to litigate the Alaska Native Corporation Shareholder hiring preference issue, which he did not, any claim arising after the filing of the complaint in the first case would still not be subject to res judicata.

Defendant Teck's violation of Plaintiff Conitz's rights to be free from racial discrimination in the workplace is a continuing violation and new cause of action accrues each day Defendant has an Alaska Native Corporation Shareholder hiring preference policy in place. The Ninth Circuit should and will have to decide whether it is illegal. (Without such ruling, any res judicata order, whether or not there was a full and fair hearing, is undermined.)

Any claims that arise after the filing of the complaint in Conitz I are not subject to the doctrine of res judicata under the preferred rule discussed in Wright, Miller & Cooper, §4409 at 760-77, noting that a general rule requiring forced amendments would be difficult to apply; this is especially true in Title VII suits where an employee cannot generally file a latter maturing claim without first filing a charge with the EEOC. *Green v. Illinois Dept. of Transp.*, 609 F.Supp. 1021, 1025 (D.C.Ill. 1985).

Res judicata is an equitable doctrine and Defendants come to the court with unclean hands, and should not receive the benefit of res judicata; as they agreed at the May 15 hearing that the Alaska Native Corporation Shareholder hiring preference was the most important issue in the case and then asked the appellate court not to hear it, *e.g.* In the May 15 Transcript, starting at p. 10 the Court states:

> Am I wrong in my understanding that this is going to boil down to a legal issue and if you're right on the law, the case is probably going to be over at this level.

Mr. Halloran:   I believe so, Your Honor.

The Court:   …And if the plaintiff prevails on the legal issue, then we move to next -- more issues….

| Mr. Daniel: | Well,…my interjection was going to be, is that the plaintiff has already briefed the legal question on the lawfulness of the shareholder preference, because it was his motion..... |

The Court interrupts but confirms and states:

> …I realized this whole case really is going to boil down to a legal issue. And the legal issue is the one that Mr. Covell, in fact, did present in his docket 64 motion,….you can save a lot of money by bringing it to an end now and see if the Ninth Circuit disagrees, but I want to do what the law is. That's all I want to do….Everybody hear everything on the telephone?

| Mr. Conitz: | Yes, we did. Thank you, Your Honor. |

Any vexation on the defendants on having to re-hear this issue is their own fault. They could have had this matter decided once and for all; but, because of their own artifice, they force not only themselves, but the plaintiff and the Court to hear this matter again. Such conduct should not be rewarded.

### Rules of Law

#### FULL AND FAIR

#### (DUE PROCESS)

1.      A litigant must receive a full and fair hearing for res judicata to apply. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 480, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). Re-determination of issues is warranted if there is reason to doubt the quality, extensiveness or fairness of procedures followed in the prior litigation. *Id.* at 481.

The best case illustrating the lack of due process is *Jones v. City of Alton, Ill.,* 757 F.2d 878 (7th Cir. 1985). In *Jones*, a policeman was accused of stealing a video tape. He attempted to cross-examine the chief about less harsh treatment for white

officers and was prevented from doing so. Jones did not receive due process and his claim was not barred. No res judicata of any sort was applied.

## NOT REVIEWED - NOT RES JUDICATA

### (COMMENT O)

2.      Unreviewed trial court decisions for cases affirmed on alternative grounds are not res judicata. Restatement (Second) of Judgments, 1981, §27, comment o. Wright, Miller & Cooper; Federal Practice and Procedure: Jurisdiction 2d § 4421 and n. 34.

Comment o states:

> If a judgment rendered by a court of first instance is reversed by the appellate court and a final judgment is entered by the appellate court (or by the court of first instance in pursuance of the mandate of the appellate court), this latter judgment is conclusive between the parties. [¶] If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations.... [¶] If the appellate court upholds one of these determinations as sufficient but not the other, and accordingly affirms the judgment, the judgment is conclusive as to the first determination. [¶] If the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination."

> *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club*, 140 Cal.App.4th 1120, 1128-29, 45 Cal.Rptr.3d 207, 212 (Cal.App. 4 Dist 2006).

## EACH PASSING DAY A NEW VIOLATION

## (CONTINUING VIOLATION DOCTRINE)

3.      An employers' official policy of direct discrimination gives rise to a new cause of action with every day that passes. *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000 (1986). "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII…" *Id.* at 395, *Morgan v. National Railway Passenger Corp.*, 536 U.S. 101, 122 S.Ct. 2061 (2002).

## CLEAN HANDS

Res judicata is an equitable doctrine. *Jones v. City of Alton, Ill.,* 757 F.2d 878, 885 (7th Cir. 1985). "[O]ne who does not come into equity with clean hands, and keep them clean, must be denied all relief, whatever may have been the merits of his claim. *Hall v. Wright*, 240 F.2d 787, 794-795 (9th Cir. 1957), *Haynes Trane Service Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 958 (10th Cir. 2009).

## NEW CLAIMS ARE NOT BARRED BY RES JUDICATA

4.      Even if Conitz had received a full and fair hearing, which he did not. Under the preferred rule, res judicata would not apply to any claims occurring after the filing of the complaint in Conitz II. 18 A Wright, Miller, and Cooper, §4409 at 76-77. This rule is especially true in Title VII suits. *Ibid*.

5.      Even if Conitz were wrong about his discrimination claim, it is still illegal to retaliate against an employee. *Wu v. Thomas*, 863 F.2d 1543 (11th Cir. 1989). Wright, Miller & Cooper, §4409 (1981) at 81.

## Introduction

Gregg Conitz works as an equipment operator for Teck Alaska Incorporated. Teck runs a mine in Northwest Alaska. Teck has a hiring preference for NANA shareholders. Doc. 10, p. 1. Teck has a lease agreement with NANA Regional, Inc. to mine on the NANA land and pays NANA royalties. NANA and Teck have a contractual relationship. They are not in a partnership and they are not a joint venture, *e.g. see* Corporate Disclosure Statements in Teck Brief at DktEntry 6833903, p. ii and NANA Brief at DktEntry 6839495, p. i. NANA owns nothing of Teck.

Conitz sued Teck in 2006 (*Conitz v. Teck Cominco Alaska Inc.*, 4:06-cv-00015-RRB, hereinafter Conitz I) for racial discrimination and failure to promote, Conitz I at Doc. 1. Conitz filed a Motion for Order of Rule of Law of the Case, Conitz I at Doc. 64 (attached as Exhibit A), *see* also portions of Kells' Deposition, attached as Exhibit E. asking the Court to decide whether or not an Alaska Native Corporation Shareholder hiring preference was a legal workplace preference or, as Conitz maintained and still maintains racial discrimination and/or national origin discrimination. That motion was ripe for decision in February of 2008. On May 15, 2008, after two or three requests, the Court held a status conference on the motion.

The Court decided that the question of the legality of the Alaska Native Corporation Shareholder hiring preference was the most important issue in the case. The Court wanted to also consider Defendant Teck's Motion for Summary Judgment, Conitz I, Doc. 91. Defendant's counsel indicated that he would be unavailable to conduct discovery for five months. With the plaintiff and many of the witnesses working a four weeks on and two weeks off or a two weeks on a one week off rotating schedule; at the mine and then to their various homes in various parts of Alaska and United States, and counsel's schedule, it is very difficult to arrange depositions. In addition, Defendant Teck had been opening Plaintiff Conitz's mail that was delivered to Plaintiff at the mine. Teck controls all communications to and from the mine and those communications had been compromised. This action only exacerbated the problems with attempting to arrange depositions, *i.e.* who to depose and when.

At the May 15, 2008 status hearing, (transcript attached as Exhibit B, hereinafter T at ___). The Court initially indicated that the motion at Doc. 64 would be denied, at which point Plaintiff's counsel said that he needed to conduct more discovery. T at 5, ln. 25 - 6, ln. 4.

The Court said it did not want to grant the continuance until November for discovery if the whole case was going to be resolved on the Alaska Native Corporation NANA Shareholder issue (of Doc. 64). T at 7, ln. 18-20. Defendant's alleged that the plaintiff was unreasonably delaying the case. The Court said, "I don't want to get into that." T at 10, ln. 4-5.

Teck's counsel, Mr. Halloran then indicated that his calendar had opened up as of that morning and that he was available for deposition. T at 11, ln. 14-15. The Court indicated that it was unnecessary to conduct discovery, as the issue could be decided as an Issue of law. T at 11, ln. 16-17.

The Court went on to say that the case "is really going to boil down to a legal issue." and if the plaintiff "prevail[s] on the legal issue, there's still all kinds of issues still open in the case," and there will be a jury trial. Therefore, "why spend a ton of money [on discovery]…if that's the case." T at 11, ln. 24 - 12, ln. 12.

Judge Beistline stated, at least twelve times, that the only the legal issues should be addressed as a matter of law.

Some excerpts from the May 15 hearing follow:

> THE COURT:…I realized this whole case really is going to boil down to a legal issue.  And the legal issue is the one that Mr. Covell, in fact, did present in his docket 64 motion… T at 13.

> THE COURT:…Mr. Covell, in your opposition, you can simply say, I refer to the pleadings that they set forth in docket 64, and I will evaluate it that way.  T at 13-14.

> THE COURT:…I want to respond to their motion for summary judgment on the  legal  issues only….And you can save a lot of money by bringing it to an end now and see if the Ninth Circuit disagrees, but I want to do what the law is. That's all I want to do. T at14 (emphasis added).

> THE COURT:…I hate to see people engage in protracted litigations, spend all kinds of money when the legal  issue forecloses their case. T at 8-9.

> THE COURT:…Because if you prevail on the legal issue, there's still all kinds of issues still open in the case….And you can save a lot of money

by bringing it to an end now and see if the Ninth Circuit disagrees… T at 14.

THE COURT:…And why spend a ton of money in other areas if that's the case. That's the -- that's all I'm trying to say today. T at 12.

The parties briefed the matter and the Court issued its order on July 21, 2008, Conitz I, Doc. 145. (Even NANA's counsel admits that at a minimum the Chuck Barger promotion to mine operations supervisor promotion was on July 25, 2008, four days after the Court granted summary judgment on July 21, 2008. *See* NANA Motion for Summary Judgment at Doc. 37.)

Therefore, Conitz was compelled to argue only the legal issues and not put facts into the record. The Court then said that Conitz had not made out a *prima facie* case. (Conitz did not have to make out a *prima facie* case under McDonnell Douglas if this was a case of direct discrimination. *See Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1985). The standard under Lowe is that "very little evidence" is required. An official policy of direct discrimination meets the "very little evidence" standard. (*See* discussion thereon in contemporaneously filed Motion for Injunction**.)**

Conitz appealed this Court's decision to the Ninth Circuit. The Ninth Circuit issued a five paragraph memorandum, DktEntry 7021430, attached as Exhibit C. The Ninth Circuit specifically acknowledged Conitz's contention that Teck's employment hiring preference for Alaska Native Corporation Shareholders is an unlawful employment preference. In affirming the District Court's summary judgment order, the Ninth Circuit acknowledged, but refused to consider the Alaska Native Corporation Shareholder hiring preference issue. Exh. C, p. 2.

## Discussion of Collateral Estoppel

"We now tread into the bramble bush of collateral estoppel." *Quinn v. Monroe County*, 330 F.3d 1320 (11th Cir. 2003).

The terminology associated with doctrines of *res judicata* is various, and has not always been used consistently. We will adhere to the following terminology. *Res judicata* is divided into two types of preclusion: "issue preclusion" and "claim preclusion." "Claim preclusion" refers to the doctrine that bars litigation of claims and issues that were raised or could have been raised in a prior action between the same parties or their privies that has been resolved by final judgment by a court of competent jurisdiction. This is the law of merger (the extinguishment of a claim in a judgment for plaintiff) and bar (the extinguishment of a claim in a judgment for defendant). Claim preclusion is sometimes called " *res judicata*" when that term is used in its narrow sense. In Illinois it is known as "estoppel by judgment" or " *res judicata*" (in the narrow sense). *Morris v. Union Oil Co.,* 96 Ill.App.3d 148, 153-54, 51 Ill.Dec. 770, 774, 421 N.E.2d 278, 282 (5th Dist.1981). "Issue preclusion" refers to the effect of a judgment in foreclosing relitigation of a matter of fact or law that has been litigated and decided in a prior proceeding involving at least one of the present parties, or its privy. The claim in which the issue is relitigated need not be the same. This is sometimes known as "direct estoppel" (if the subsequent claim is the same) or "collateral estoppel" (if the subsequent claim is not the same). In Illinois issue preclusion is also known as "estoppel by verdict." *Morris,* 96 Ill.App.3d at 154, 51 Ill.Dec. at 774, 421 N.E.2d at 282. Where the parties and claim are the same, direct estoppel may overlap with claim preclusion. For further discussion of terminology see *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4402 (1981); F. James & G. Hazard, Civil Procedure § 11.3 (2d ed. 1977).

*Jones v. Alton*, 757 F.2d at 880, fn. 1.

## DISCUSSION

## No Decision - No Res Judicata

## (Comment o)

Prior to comment o, of the Restatement, the traditional rule would have allowed res judicata to apply to appealed, but unresolved issues. That is the Alaska Native Corporation Shareholder hiring preference in this situation. The traditional rule is "the height of unreason".

The traditional rule is "the height of unreason." "To treat as controlling the findings of a trial court when the appellate court upsets or disregards them and renders a decision of affirmance on different grounds furnishes parties to other litigations affected by the decision a false guide." *Newport Beach* at 1128*, citing Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A.,* 92 F.2d 37, 40 (2nd Cir. 1937) cert. denied*.

"If a judgment rendered by a court of first instance is reversed by the appellate court and a final judgment is entered by the appellate court (or by the court of first instance in pursuance of the mandate of the appellate court), this latter judgment is conclusive between the parties. [¶] If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations.... [¶] If the appellate court upholds one of these determinations as sufficient but not the other, and accordingly affirms the judgment, the judgment is conclusive as to the first determination. [¶] If the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination."

*Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club*, 140 Cal.App.4th 1120, 1128-29, 45 Cal.Rptr.3d 207, 212 (Cal.App. 4 Dist. 2006).

This comment is discussed in *Flying J, Inc. v. Pistacchio*, 2008 WL 906396 (E.D.Cal. 2008). *Flying J* at 38 quotes Judge Hand as stating that declaring an issue undecided by the appellate court to be res judicata would be "the height of unreason."

Besides in *Flying J*, comment o is also discussed in *Standard Oil Co. of California v. U.S.*, 231 Ct.Cl. 112, 685 F.2d 1337, 1342-33 (Ct.Cl. 1982), where they quote a Professor Scott and adopt the Restatement comment not affecting collateral estoppel on an issue that was not decided by an appellate court in a prior litigation.

In Conitz I, the appellate court affirmed the summary judgment order but did not reach the Alaska Native Corporation Shareholder hiring preference issue. The rule in *Newport Beach* and Restatement (Second) of Judgments applies. The Ninth Circuit does not have a case directly on point. However, *Diruzza v. County of Tehama*, 323 F.3d 1147 (9th Cir. 2003) agreed with traditional rule which would have afforded the undiscussed issue's preclusive effect. However, because of *Newport Beach*, California now follows the Restatement (Second) of Judgments and the modern rule, which in part rely upon *Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A.,* 92 F.2d 37, 40 (2nd Cir. 1937) cert. denied. Clearly, the modern rule is that there is no

preclusion to arguing the illegality of the Alaska Native Corporation Shareholder hiring preference [1]

## Not Full and Fair

In Conitz I, it appeared that due process was being met if the court ruled on the Alaska Native Corporation Shareholder hiring preference issue and Plaintiff Conitz received review of that issue in the Ninth Circuit.

If that were to be the result, Plaintiff Conitz was content on having the Court stop discovery, ordering him to reply only to the legal questions in the briefing and having the Court rule on that issue.

The flaw in due process however, was that the Ninth Circuit did not review the Alaska Native Corporation Shareholder hiring preference issue. Because the Ninth Circuit did not do so, Plaintiff Conitz was denied due process under the facts and circumstances of his case. He was not permitted to litigate the most important issue in his case to the desirable ordered and agreed upon stage; meaningful Ninth Circuit appellate review of the Alaska Native Corporation Shareholder hiring preference issue.

Furthermore, because Conitz received no review of the Alaska Native Corporation Shareholder hiring preference, he was denied the opportunity to

_____

[1] NANA Motion for Summary Judgment at Doc. 37, p. 14, fn. 3 says that 'Restatement (Second) of Judgments, 1981, § 27, comment o states that "when *an appellate court has affirmed on one ground and passed over another, [issue] preclusion does not attach to the ground omitted from its decision.*" Wright, Miller & Cooper; <u>Federal Practice and Procedure: Jurisdiction</u> 2d § 4421 and n. 34, citing decisions from the First, Second, Fourth, Fifth and Tenth Circuits."' (Emphasis in original.)

demonstrate his *prima facie* case under the "very little evidence" test of *Lowe v. Monrovia.*

*Dash, Inc. v. Alcoholic Beverage Control Appeals Board*, 683 F.2d 1229 (9th Cir. 1981) gives a general description of res judicata and indicates that the federal courts have traditionally adhered to res judicata principles. However, "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue," the principles do not apply. *Dash* at 1232, c*iting* to *Kremer v. Chemical Const. Corp.,* 456 US 461, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982).

> Re-determination of issues is warranted if there is reason to doubt the quality, extensiveness or fairness of procedures followed in the prior litigation.
>
> *Id.* at 481.

There is way more than a "reason to doubt" the quality, extensiveness or fairness in the procedures followed in the prior litigation. Res judicata does not apply.

"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.* at 484.

In *Lindsey v. Prive Corp.*, 161 F.3d 886 (5th Cir. 1998), the head waitress at a gentlemen's club brought action under the age discrimination in employment act and unlawful denial of promotion to position of topless dancer. The bankruptcy trustee and Plaintiff settled case with the understanding that the plaintiff would then pursue her claims against the debtor's alleged successor's interest and turn over to the trustee 25%

of any sums recovered in successor litigation. The bankruptcy trustee settlement did not preclude the alleged successors in interest from disputed whether or not there had been any acts of discrimination.

The Court in *Lindsey* said that re-determination of issues is warranted if there is reason to doubt the quality, extensiveness or fairness of procedures in prior litigation. We have noted on occasion that issue of preclusion applies only where there is no special circumstance that would render preclusion inappropriate or unfair. General statements of issue preclusion should be approached with great caution.

To paraphrase the court in *Lindsey v. Prive*, the defendant-appellees were not given a full and fair chance to defend the age discrimination claim. Indeed, they were given no chance. Thus, the successors in interest remained free to try the liability issue in a subsequent proceeding.

## Continuing Violation Doctrine

If an employer has a policy of direct discrimination, it falls under the continuing violation doctrine. A continuing violation is always subject to a civil rights cause of action.

Indeed, there is a new violation occurring every day that such policy exists. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061 (2002).

…[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated.

*Morgan* at 2074.

The Court should "redress the evil at which the federal legislation was aimed…"

*Morgan* at 2076.

Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII…

*Bazemore v. Friday*, 478 US 385, 395, 106 S.Ct. 3000 (1986).

Each day that passes that Conitz has to work in a work environment where an employment hiring preference is given to Alaska Native Corporation Shareholders over all other races, ethnicities and national origins actionable under Title VII.

## A Different Kind of Animal

Rarely will a Court, especially these days, find a case of direct intentional discrimination. That leaves courts to immediately think in terms of burden shifting under *McDonnell Douglas* and disparate impact and statistical analyses.

None of those are necessary to the case here.

This is a case of intentional direct discrimination. It requires very little analysis to see the illegality. If an employer has a sign that says, "We prefer whites to blacks in the workplace," it is an illegal employment practice under 42 U.S.C. 2000e-2(a).

In *Bazemore*, salary disputes had existed in the North Carolina Extension Service prior to 1964. Prior to 1965, the Extension Service maintained two separate racially segregated branches and paid black employees less than white employees. The Court said that the illegality of "salary disparities…perpetuated thereafter is too obvious to warrant extended discussion… to the extent an employer continued to engage in that act or practice, it is liable under that statute." This was an ongoing violation. To the extent that this discrimination was perpetuated after 1972, every paycheck issued was an actionable wrong under Title VII.

"The "critical question" the Court declared "is whether any present violation exists."" *Bazemore* at 396, fn. 6.

If the acknowledged pre-1965 discrimination continued for employees employed prior to 1965, then respondents violated the law. *Id*. at 397, fn. 8.

Just as in *TransWorld Airlines v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed. 523 (1985), *Los Angeles, Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed. 567 (1978), *Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C.,* 462 U.S. 669, 103 S.Ct. 2622 (1983) (cited and discussed below), *Reed v. Lockheed Aircraft*, 613 F.2d 757 (9th Cir. 1980), and Conitz, the employer has an official policy of discrimination. The discrimination is too obvious to warrant extended discussion. This is no different than having a sign on the wall in the lunchroom that says, "We prefer whites to blacks in the workplace." Such official policy is direct violation of 42 U.S.C. 2000e-2(a) and (AS 18.80.220(a)(3)).

The Court needs to keep in mind the discrimination here is neither subtle nor indirect. (The only possible indirectness is that the defendant's current use of the term shareholder instead of Alaska Native. Keep in mind that Defendant has defined shareholder as "a native of the NANA region." Conitz I, Doc. 64 (attached as Exhibit A), Doc. 64-10 at p. 5.[2]

Prior to the 1964 Civil Rights Act, many employers in the south had official policies of segregation in the workplace. After passage of the Act, these official policies faded away. However, there was still indirect discrimination that gave rise to various theories of prosecuting civil rights cases, e.g. disparate treatment and disparate impact. A number of cases illustrate however illustrate direct discrimination.

In *Los Angeles, Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed. 567 (1978), the employer's policy of requiring female employees to make larger contributions to a pension fund than male employees was found to be discriminatory on its face. *TransWorld Airlines v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed. 523 (1985).

The question of whether a discriminatory policy, to whatever extent, was sufficient evidence to overcome a summary judgment motion was addressed in *Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C.,* 462 U.S. 669, 103 S.Ct. 2622 (1983).

---

[2] However, the Court needs to keep in mind that these are shareholders in Alaska Native Corporations. The term NANA stands for Northwest Arctic Native Association. Saying Alaska Native Corporation NANA Shareholder preference is saying Native Native preference. *See* contemporaneously filed Motion for Injunction

There, the employer provided different pregnancy health benefits for employed females as opposed to female dependents of male employees. This was found to be discrimination for it would treat a male employee with dependents in "a manner which but for that person's sex would be different."

> The Court explained, "…the same result would be reached even if the magnitude of the discrimination were smaller. For example, a plan that provided complete hospitalization coverage for the spouses of female employees but did not cover spouses of male employees when they had broken bones would violate Title VII by discriminating against male employees."
>
> *Newport News* at 2630.

*LA Water* demonstrates that a policy based on a prohibited characteristic is direct discrimination and more than sufficient direct evidence to overcome any summary judgment motion. Even if the Court does not consider evidence, the policy alone is sufficient evidence of direct discrimination to overcome any summary judgment motion.

In *Thurston*, 496 US 111, 105 S.Ct. 613 (1985), an issue of direct discrimination concerning age, Plaintiff's do not have to meet a *McDonnell Douglas* case or disparate impact test. If there is a policy, it is discriminatory.

In *Bartmess v. Drewrys U.S.A., Inc.,* 444 F.2d 1186 (7th Cir. 1971), Drewrys had a retirement plan where females were retired at age 62 and men at age 65. The Court said, "We have no difficulty in concluding that the actual maintenance of a discriminatory retirement plan can be one of the acts which 'adversely affect (an individual's) status as an employee, because of such individual's * * * sex.' and that

retirement plans should be viewed as 'conditions of employment' within the meaning of Section 703 of Title VII (42 U.S.C. 2000e-2(a)).

## Full and Fair

Conitz simply did not have a full and fair hearing. The Court told Conitz not to do anymore discovery and that the Court agreed with Conitz that the Ninth Circuit should hear the legal issue in the case concerning the Alaska Native Corporation Shareholder hiring preference. If Conitz won on that issue, he could come back and litigate the matter.

The only way to make this all fair is to do exactly that. The Court needs to rule on Conitz's Motion for Injunction, etc; and resolve the issue of the Alaska Native Corporation Shareholder hiring preference once and for all. The Ninth Circuit can hear and decide that issue.

To achieve this goal, Plaintiff Conitz suggest that the most certain and swift way is for the Court to grant his injunction. The appellate court might attempt to avoid making a decision again. If this Court finds the injunction issue in Conitz's favor, the appellate court will HAVE TO decide the issue.

Since the burden of proof for collateral estoppel is on the defendants; and they have not shown that the prior proceeding was full and fair, and in fact contributed to the unfairness by misrepresenting their position to the Court, the Court is free to fully reconsider the Alaska Native Corporation Shareholder hiring preference. That issue is further briefed separately.

Plaintiff's counsel, in contemplating the Court's ruling these many months, has decided that the most distinct and glaring reason why the Doc. 145 Order in Conitz I is wrong, is that it lays essentially all its weight on *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). The crux of the Court's ruling says, "…the shareholder hiring preference is not prohibited by law because it is based on the permissible distinction of shareholder status rather than race."

Shareholder status is not a permissible distinction. Being ethnically a Native American is under some circumstances a permissible distinction. However, those distinctions are very limited under *Morton v. Mancari*.

The distinction the Court missed here is that *Morton v. Mancari* favors all Native Americans and not just a group or a portion of a group from any one region. Any such preference would be, even among Indians, would be illegal national origin discrimination. *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.,* 154 F.3d 1117 (9th Cir. 1998), where the Ninth Circuit held that discrimination in employment on the basis of membership in a particular tribe constitutes national origin discrimination and as a matter of first impression, Title VII's Indian preferences exemption does not permit an employer to discriminate on the basis of tribal affiliation.

Even if the §703(i) exception was to apply, it could not be used solely for members of the NANA Corporation.[3] In other words, a hiring preference in favor of all

---

[3] Note that in *Malabed*, the §703(i) exception speaks in terms of "affirmatively favoring "Native Americans" over others". *Malabed* at 868. Note also that §703(i) required a "publicly announced employment practice of such business or enterprise under which a preferential treatment is given to any individual because he is an Indian living on or near

Native Americans, if it met all of the other necessary criteria, might be legal. But, if it is only in favor of a limited segment of Native Americans, such as only the Natives of the NANA Region, or the same group, the stockholders of the Northwest Arctic Native Association, it would make out a claim of discrimination between those Natives and other Natives and also whites, blacks, Koreans, Filipinos, and others.

## Best Case to Illustrate Lack of Due Process

*Jones v. City of Alton* is a case of black police officer who was accused of stealing a video tape from a convenience store. During a state court proceeding in regard to the dismissal of the officer, he attempted to ask the chief questions concerning other white officers who had committed worse violations and were disciplined less. He was prohibited from presenting such evidence. The court in that case found that Jones did not have a full and fair hearing and therefore, res judicata did not apply.

This is same type of denial of due process in Conitz. He asked to have discovery and the judge told him no and that the legal issue would be decided first. The legal issue and the factual issue were then both decided and then only the factual issues decided against him. This is fundamentally unfair. The Court should give no credence to any prior rulings in Conitz I.

---

a reservation." Teck's employment preference is not publicly announced, e.g. *see* attached newspaper ads, Exhibit D, with publicly announced policies and justification thereof. Teck's failure to publicly announce its policy alone would invalidate it even if it were legal, which it is not. Further, failure to announce any such policy; and having it nowhere in writing, except for in its 1982 Agreement and slicker publications, is further evidence of Teck's guilty mind. *See* guilty mind discussion below.

**b. Guilty Mind**

We are all familiar with equal opportunity statements put out by employers. They will typically say something to the affect of:

> We are an equal opportunity employer and do not discriminate on the basis of race, sex, creed, color or national origin, etc.

Then, if there is an allegation of discrimination in the workplace, the employer can claim, and likely does so truthfully, that there is no such policy of discrimination.

However, if there is an official policy of discrimination, it ought to be included and is required if the employer seeks the limited exception to Title VII under 703(i).[4]

Note for example, the clipping from the newspaper concerning a workplace preference notice in a Help Wanted ad, Exhibit D.

At first, such notice may seem inconsequential. However, it clearly and unequivocally gives the potential employee notice of a preference in the workplace and the opportunity for the employer to explain the legality of its preference. Furthermore, at least then the employee knows where he stands.

Teck on the other hand will not admit to having a written policy on this. It is at its absolute utmost to hide its 1982 agreement with NANA that states it has such a

_____

[4] This exception, the "Indian preference" to Title VII, is currently codified as 42 U.S.C. 2000e-2(i). However, it has been commonly referred to in the case law under the previous numbering as the §703(i) exception.

preference. It avoids making any such statement on any of its personnel documentation. The reason it does not, is because it has a guilty mind. It knows that its workplace preference is not legally justified. This is further illustrated by Mr. Conitz's affidavit where it says he spoke with Mr. Greenhall and was told that he would be able to advance without hindrance of an Alaska Native Corporation Shareholder hiring preference. (Conitz Affidavit, to be filed contemporaneously, para. 13).

### In No Event Would Res Judicata Apply to the New Claims

*Green v. Illinois Dept. of Transp.,* 609 F.Supp 1021 (D.C.Ill. 1985) illustrates the Wright, Miller & Cooper, (1981), §4440 suggested approach as to where to draw the line between "new claims and old claims." They suggest that it be the date of the filing of the first suit. This is because there are often times Title VII documents to be filed and times to run.

> Substantial disruption could result from forced amendment…it is hard to justify…any test so clear that plaintiff's could afford to apply it without seeking explicit judicial guidance. The better rule is that a claim for damages need include only matters arising out of injuries inflicted before the action is filed. Wright, Miller & Cooper, §4409, p. 219.

Both Teck and NANA admit that Conitz's subsequent claims are new and different claims from the initial lawsuit.

Even if any of Conitz's claims were barred, they would still be admissible background evidence as to the new claims.

Any injunction would ride on a decision of the Alaska Native Corporation Shareholder hiring preference. Such decision would be a critical element of any injunction claim; and any injunction claim could not be heard without that decision. It would be unfair to preclude and injunction claim at this juncture. This brings us full circle back to comment o.

Additionally, the Court there notes that "it may be fair to preclude later claims for injunctive relief which are based on a continual course of conduct which occurred before judgment had been entered in a previous suit…." *Green* at 1027. However, the Court held that the previous case rulings on injunctive relief were res judicata as to the continuing post-verdict violations "<u>because the district court had given the parties an opportunity to argue whether injunctive relief was proper.</u>" *Ibid.* (emphasis added). This issue was never reached in Conitz I and again, the basis of that issue, whether the Alaska Native Corporation Shareholder hiring preference is illegal, was avoided by the Ninth Circuit and under comment o, there is no collateral estoppel to that and can be no collateral estoppel to the injunctive issue as well.

### Retaliation

Conitz has made a retaliation claim in the first case and in the second case. Retaliation in the second case is a claim that did not arise until after the granting of summary judgment in the first case. Under the rule of *Green v. Illinois Dept. of Transp.,* all of the Baldwin and Barger claims should be allowed, including the direct claims of discrimination, as well as the retaliation claims.

(1)    Even if there is no legitimate complaint on Conitz's part for discrimination, he can still have a retaliation claim. *Wu v. Thomas*, 863 F.2d 1543 (11th Cir. 1989). These

claims will not be disallowed by res judicata and collateral estoppel. In *Wu*, the defendants moved to dismiss Ms. Wu's subsequent claim.

> 42 U.S.C. 2000e-3(a) states that:
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Such a claim does not require that the employer actually have been engaged in an unlawful employment practice; rather, the plaintiff need only to have a "reasonable belief" that an unlawful employment practice was occurring. *Wu* at 1549.

Conitz here, even if all of his claims go away except for the Baldwin and Barger claims and the retaliation claims thereon, is entitled to have the Ninth Circuit hear the question of the issue of the illegality of the Alaska Native Corporation Shareholder hiring preference.

Even if Conitz had no claim for discriminatory hiring, he would still have a claim for retaliation. Even if that were Conitz's only claim, he and the jury are entitled to know whether or not the hiring preference is illegal or not because some jurors are more likely to believe there was retaliation if an employee complained about an actual illegal hiring preference that and employer exercised, and jealously guarded.

**Unclean Hands**

Res judicata is an equitable action. *Jones v. City of Alton, Ill.,* 757 F.2d 878, 885 (7th Cir. 1985). "…one who does not come into equity with clean hands, and keep them clean, must be denied all relief, whatever may have been the merits of his claim. *Hall v. Wright*, 240 F.2d 787, 794-795 (9th Cir. 1957), *see* also *Haynes Trane Service Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 958 (10th Cir. 2009). Teck and NANA both have unclean hands in this matter. Plaintiff Conitz suggested to the Court that NANA ought not be allowed into Conitz II because it said it had an interest in the case; but when it had the opportunity to have that interest litigated in Conitz I, it told the trial court that it was the most important issue and it wanted to see it resolved, but then it urged the appellate court to dodge the issue. NANA Brief in Contiz's appeal, number 08-35730, DktEntry 6834945 at p. 6, where it joins in Teck's appellate arguments. *See* Opposition to NANA Motion to Intervene, Doc. 27. This Court contemplated not letting NANA into the action at all this time around.

The same is true of Teck. Teck agreed at the May 15 hearing that the Alaska Native Corporation Shareholder hiring preference was the most important issue and it should be decided. It sat there and listened to the Court say multiple times that this is the most important issue and it needs to go up on appeal to the Ninth Circuit. *See* Transcript of May 15 Hearing, Exhibit B. It then turned around and argued just the opposite to the appellate court. Teck's Brief in Conitz Appeal number 08-35915, DktEntry 6833903 at p. 13. Teck and NANA both made their own beds here. They should sleep in. They should not be heard complain that they are vexed because it is their own doing. The Court should not reward such conduct.

**Teck and NANA Briefs**

Teck states that:

…in Mr. Conitz's previous lawsuit, this court held that Teck's "application of the shareholder hiring preference is not prohibited by law because it based on the permissible distinction of shareholder status rather than race." Conitz v. Teck Cominco Alaska, 4:06-cv-15 RRB at Doc. 145. Each and every claim in the current complaint is resolved by that determination.

Teck Motion, Doc. 10 at p. 4.

Conversely, if that determination is not preclusive, each and every claim Mr. Conitz's first lawsuit is viable. As the Court and the parties agreed, it is the main issue and the case. It has not been resolved; and comment o prevents the unfair application an unreviewed trial court decision from, freezing out, and preventing an aggrieved civil rights plaintiff from having a fair day in court.

Issues (2) and (3) of Teck's test are not met because: (2) there was no judgment in the prior action because the issue was never reviewed; and (3) the prior action, again, was not to a final judgment because the issue was not reviewed.

NANA's brief suffers the same criticisms. NANA admits that the Ninth Circuit did not address the shareholder preference issue. Doc. 37 at 3.

NANA's test includes: (2) "the issue must have been actually litigated"; and (3) "the determination of the prior litigation in the must have been a necessary part of the judgment in a prior action." Doc. 37-11.

Again, the issue is not actually litigated because the Ninth Circuit failed to address the shareholder preference. See again, comment o.

## Cases of Special Sensitivity

In *Christian v. Jemison*, 303 F.2d 52, 54-55 (5th Cir. 1962), *cert. denied* 371 U.S. 920. A city ordinance requiring local transportation companies to segregate the seating of white and black passengers was challenged and lost in state court. Three months later, the Supreme Court overruled a "separate but equal" doctrine. A second action was permitted to upset the ordinance.

The wisdom of the rule which exempts such cases from the doctrine of res judicata is clearly revealed in this instance. It would be a senseless absurdity to sanction in Baton Rouge, segregated seating under a law patently unconstitutional while everywhere else in the country, segregated seating is prohibited. The constitution is not geared to patchwork geography. It tolerates no independent enclaves (per Wisdom, j).

Wright, Miller & Cooper, §4415, p. 372.

If the Court denies meaningful review, will we have to wait 56 years before we reach the issue again

The ultimate question for the Court here is whether Conitz was given get a full and fair opportunity to litigate the merits of his case in Conitz I, and whether the procedures (whether intended to do so or not) afforded minimum due process; such as the opportunity to present evidence on his claim and have his claim fully and fairly heard, especially on the agreed upon main issue in the case.

## <u>Conclusion</u>

There are a multitude of reasons for the Court to deny the motion for res judicata. They are (1) no full and fair hearing, (2) no res judicata when the appellate did not review the Alaska Native Corporation Shareholder hiring preference issue, (3) a continuing violation brings a new actionable violation each day, (4) any claims filed after

the complaint in Conitz I are actionable, (5) any retaliation claims for conduct after the filing of the complaint in Conitz I are actionable, (6) Conitz was denied due process in multiple respects by not being allowed to conduct discovery, and not having his main issue heard by the Ninth Circuit. Not having his main issue heard by the Ninth Circuit hornswoggled him on a direct discrimination claim that he could have made out, even without the presentation of additional evidence.

The most logical ground for *prima facie* case argument was the "some evidence" rule of direct evidence under *Lowe v. City of Monrovia*. The policy that favors the hiring of Alaska Natives as Alaska Native Corporation Shareholders is too obvious to warrant extended discussion. The only issue that has stood between the Court and the granting of Conitz's motion is its perception that a Native preference, of any sort, is permissible under *Morton v. Mancari*. While this concept is mistaken even under that style of thinking, the *Mancari* preference still is not valid when it is for one group or "tribal affiliation." Navajos cannot discriminate against Hopis. Any Native hire preference has to be to the benefit of all Native Americans. *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist. See* also *Malabed v. North Slope Borough*, *esp.* the state court decision.

The Court should deny the res judicata motion in whole. The Court should consider and grant Plaintiff Conitz's motion for injunction, etc.

RESPECTFULLY SUBMITTED this 9th day of October, 2009 at Fairbanks, Alaska.

LAW OFFICE OF KENNETH L. COVELL
Attorney for the Plaintiff, Gregg Conitz
s/ Kenneth L. Covell
712 Eighth Avenue
Fairbanks, Alaska 99701
Phone: (907) 452-4377
Fax: (907) 451-7802
Email: kcovell@gci.net
ABA No. 8611103

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been
served electronically through ECF to the following
attorney(s) and/or parties of the record:

**Sean Halloran**

Dated: October 9, 2009
By: s/   Kenneth L. Covell