Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK  99701
Phone: (907) 452-4377
Fax:     (907) 451-7802
E-mail:  kcovell@gci.net

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT FAIRBANKS**

| | |
|---|---|
| GREGG CONITZ,<br><br>    Plaintiffs,<br><br>vs.<br><br>TECK ALASKA INCORPORATED,<br><br>    Defendant. | <br><br><br><br><br><br><br><br>Case No. 4:09-cv-20 RRB |

**DECLARATION OF GREGG CONITZ II
(Filed with Res Judicata Motion at Doc. 29 and
in Support of Injunction Motion)**

I, Gregg Conitz, Plaintiff in the above captioned matter, make my sworn declaration as follows:

1)   I have personal knowledge of and am competent to testify to all facts set forth in this declaration.

2)   I have read Larry Hanna's "file note" of July 28, 2008 at Doc. 42-2.

3)   In the second paragraph of Mr. Hanna's "file note" he claims that the reason I was not "interviewed for the recent supervisor position, [was] because [I] was just interviewed eight months ago for the last vacant supervisor position." I have never been interviewed

by Mr. Hanna for a supervisor position. However, on or about August 25, 2007, Mr. Hanna did interview me for the Trainer position.

4) Other than the Supervisor position that I was tested and selected for by John Kells, and then subsequently passed over in favor of an Alaska Native/NANA Shareholder, I have never been interviewed for the Supervisor position.

5) The only other Supervisor position that had an opening during this period, I did apply for on or about September 1, 2007 through my Supervisor, Bob Shields. However, I was never interviewed for the opening; and the position was subsequently awarded to Jimmy Baldwin an Alaska Native/NANA Shareholder on or about November 23, 2007.  This decision was made by Mr. Hanna to fill the position he had vacated in August when he was promoted to the Mine Foreman position. Mr. Hanna is clearly a strong supporter of Alaska Native/NANA Shareholder preference and is biased against me as a result. He had been in the Mine General Foreman position for less than three months when this decision was made. I did not serve as Acting Supervisor at all during this time as I was still being excluded from the position in retaliation for my 2006 EEOC complaint. Therefore I essentially was not considered for this promotion.

6) Regarding Mr. Baldwin's experience compared to mine, to the best of my knowledge he started in Mine Operations in 1994, was promoted to Mine Operations Trainer around 2002, quit his job around 2004 and returned as an operator around 2006. He had little experience as a supervisor, no prior mining experience & no other work experience to my knowledge. He had some problems getting along with management and other workers. I know as a non-shareholder if I quit my job I would not be rehired, much less promoted to

a supervisor position shortly afterwards. I have elaborated on my own mining and supervisory experience in the following paragraph 9.

7) Mr. Hanna, in his "file note," makes a number of statements asserting that I did not possess the skill level or "supervisory style" that was needed for the position and used me extensively as such for a number of years. However, this is obviously not true, as they had placed me in the Acting Supervisor position. In fact, Mr. Hanna recognizes that I have a superior skill level in the mine department. In his last paragraph and in regards to me not accepting an Acting Supervisor position because I was once again passed over when, in the last sentence, Hanna says "I explained to him he may be taking directions from an individual that didn't possess his skill level." Meaning that, if you are not the Acting Supervisor, you will be working for others in the mine department who are less experienced than you and you really ought to be supervising. Mr. Hanna's "file note" is obviously inconsistent and merely a document prepared in the anticipation of litigation.

8) Mr. Hanna's "file note" also referenced the discussion between us in which he informed me of Barger's promotion to the Supervisor position. I asked him repeatedly if he had considered my qualifications and experience in comparison to Mr. Barger's in making his decision and was never given a direct answer. I also asked him repeatedly if there was anything regarding my performance that was lacking or that would deter me from advancement within the company and was told "No", including that he did not state to me that I had a problem with safety. During this conversation he stated that he felt that Mr. Barger was "doing a better job" than I, but would never give me a specific reason as to why he thought so. At the time of Barger's promotion he had little supervisor training and experience. All justification for Barger's promotion has been put forth after this

discussion with Mr. Hannah and I do not believe it was actually considered at the time of Mr. Barger's promotion. I believe that the primary consideration for Mr. Barger's promotion was his status as an Alaska Native/NANA Shareholder.

9) Mr. Barger's job at the Teck mine is his only work experience. At the time that he was promoted to Acting Supervisor he had about 6 years mining and equipment operating experience. When he was promoted to full time Supervisor he had only 2 years experience as Acting Supervisor. At the point that I was passed over for the supervisor promotion I had 14 years experience as an operator in the mine department at the Teck mine. I had been an Acting Supervisor for a period of roughly 7 years except for the time that I was demoted from this position in retaliation for my EEOC complaint of 2006. I had worked for Teck for over 19 years including 5 years in Mill Maintenance as a Journeyman Millwright Mechanic. My years of Acting Supervisory experience at the Teck mine have included working under the direction of several Mine Foremen, Mine Superintendents, and Mine Supervisors all of who have provided me training and experience in mine operations procedures and personnel management. I have been sent to several supervisor training courses including the DDI management training series, Incident Investigation Training, and Recognizing Signs and Symptoms of Drug and Alcohol Abuse in the Workplace. I also HAZWOPER training, confined space training, and overhead crane operation certification. Prior to working for Teck, I had previously worked for 2 other mining companies, 7 years for Alaska Gold Company in Nome Alaska and 3 years at Golden Gate Mining Company in northern Idaho, a hard rock underground mine and mill. At Alaska Gold Company I started at entry level laborer and moved to Journeyman Equipment Operator in 2 years. After 6 years I was promoted to

Winchman for Dredge #5. The position of Winchman is the crew supervisory position in which you are responsible for the entire operation of the dredge and the crew if the Dredgemaster is not present, as on nightshift. When the Dredgemaster is on board the Winchman is responsible for the operation of the dredge. Dredge #5 is a 2500 ton mining machine with an estimated replacement value of over 50 million dollars. This is far beyond the scope of any single piece of mining equipment at the Teck mine, if not greater than the total cost of the Teck mine Operations equipment fleet. The Alaska Gold Company took the position of Winchman very seriously and would only award this position to a person in who they had the utmost confidence. In my mining experience at Golden Gate I was exposed to drilling and blasting in hard rock underground mining, material haulage, milling operations and equipment maintenance for both milling and mining equipment. Repeatedly, Ted Zigarlick in particular, and the other Mine Superintendents and Mine Foreman have ignored my mining and equipment experience prior to working for Teck and my years of actual Teck mine experience, while at the same time expounding upon the limited experience of the Alaska Native/NANA Shareholders who they have promoted.

10) I have not volunteered, nor have I been requested, to serve as Acting Supervisor in the interim since my discussion with Mr. Hannah. It is apparent that serving as Acting Supervisor would afford me no further opportunity of advancement to the Supervisor position. I am aware that Teck not hesitate to terminate me at any opportunity in retaliation for my claims with EEOC and pursuance of this lawsuit. As Acting Supervisor I would be placing myself in a greater position of responsibility and therefore risk for termination.

11) I am qualified for the positions that Baldwin and Barger were promoted to, instead of me. Even I was less qualified than Hanna and Baker; I am still more qualified than Baldwin and Barger.

## DECLARATION

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on November 11, 2009.

s/ Gregg Conitz

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been served electronically through ECF to the following attorney(s) and/or parties of the record:

**Sean Halloran**

**Thomas Daniels**

Dated: Novembe3r 11, 2009
By: s/   Kenneth L. Covell