SEAN HALLORAN
Hartig Rhodes Hoge & Lekisch P.C.
717 K Street
Anchorage, AK  99501
Phone:  907-276-1592
Fax:    907-277-4352
mail@hartig.com

Counsel for Teck Alaska Incorporated

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ,<br>          Plaintiff,<br><br>vs.<br><br>TECK ALASKA INCORPORATED<br>          Defendant, and<br>NANA REGIONAL CORPORATION<br>          Intervenor Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 4:09-cv-00020-RRB

## DECLARATION OF JIM SOMERS

I, Jim Somers, make my sworn declaration as follows:

1.      I have personal knowledge of and am competent to testify to all facts set forth in this affidavit.

2.      I am employed by Teck Alaska Incorporated as Superintendent of Human Resources.

3.      Teck Alaska Incorporated was formerly known as Teck Cominco Alaska Incorporated, and prior to that was known as Cominco Alaska Incorporated.

Teck Alaska is not the same company as Teck Resources Limited. Teck Alaska is not the same company as Teck American Incorporated. Teck Alaska is not the same company as Cominco American Incorporated. Teck Alaska is a different company from any and all other companies that may be licensed to use the Teck name, and is a different company from any and all other companies that are or have previously been licensed to use the Cominco name.

4.      Teck Alaska does not discriminate on the basis of race.

5.      Teck Alaska has a hiring preference for NANA shareholders. The policy has never been reduced to writing, but is uniformly applied by the company when two or more top-ranking candidates for a job are found to be equally qualified. In that instance, shareholder status would be the tie-breaker if one of the top ranked candidates was a NANA shareholder. In situations where a candidate is rated superior to all other candidates, the top candidate is selected as the successful candidate and hired into the position based entirely on merit.

6.      The Red Dog Project is a joint venture under Alaska common law in which Teck Alaska Incorporated and NANA Regional Corporation each participate. NANA's equity interest in that project is currently 25%, and is scheduled to increase to 30% in 2011. Ever since Teck joined the Red Dog Project in 1988, NANA Regional Corporation has had the right to enforce Teck's commitment to hire NANA shareholders, and, if it should choose to do so, has a right to require that Teck adopt hiring preferences for successively larger groups of Alaskans in

accordance with the terms of an earlier Agreement that NANA entered into with Cominco American Incorporated. However, Teck does not now, and to the best of my knowledge never has, implemented the hiring preference program outlined in the 1982 Cominco American / NANA agreement.

7. I am aware that Mr. Conitz has asserted that Teck's hiring preference for NANA shareholders discriminates between different classes of NANA shareholders. This is not true. The hiring preference for NANA shareholders is applied to all NANA shareholders equally, without regard for what class of NANA stock they may hold, without regard for whether the shareholder has voting rights, and without regard for whether the shareholder is an Alaska Native.

8. It is common that applicants for entry level positions at Red Dog are found to uniformly meet relevant qualification standards, and are therefore rated equally. Consequently, the preference for NANA shareholders is frequently applied when hiring entry level employees.

8. Unlike applicants for entry level positions, the qualifications of candidates for management and supervisory positions tend to vary considerably. As a result, there is typically one candidate who is found to be better qualified than all other applicants, and it is rare that the hiring preference for NANA shareholders is invoked to tip the balance in favor of one managerial or supervisory candidate over another.

9. Mr. Conitz is a mediocre employee with few skills of the type that Teck

seeks in those it invites to join its management team. When he has applied for supervisory positions, he has typically been ranked at or very near the bottom of the applicant pool. He has not been promoted as a result of his being unqualified for the positions he seeks to obtain. Never once has Teck applied its policy favoring NANA shareholders in a manner that affected Mr. Conitz's efforts to obtain a promotion at Red Dog. Because other candidates tend to be vastly superior to him, I believe it is unlikely that Mr. Conitz will ever be ranked equally with the top candidates for any supervisory positions, and, consequently, it is unlikely that Teck's preference for NANA shareholders will ever be applied in such a manner as to affect Mr. Conitz.

10.     I anticipate that there are likely to be 60 or more positions filled within the coming year in which Teck's preference for NANA shareholders will be a decisive factor. The payroll for those positions between the anticipated dates of hire and the end of the year 2010 is likely to exceed $1,877,000. For the year 2011, payroll for those positions is likely to be between $3,920,000 and $4,289,000.

11.     Teck's participation in the Red Dog Project was conditioned on its commitment to prefer NANA shareholders when hiring employees to work at Red Dog. An injunction of the type requested by Mr. Conitz would necessarily cause Teck to breach its contractual obligations to NANA and to Cominco American. Additionally, if Teck is wrongfully enjoined from applying its shareholder hire preference, some individuals who have a right to obtain employment at Red Dog

will be denied it, while others having no right to Red Dog employment will obtain it. Upon the lifting of such an injunction, it would likely be necessary to terminate the employment of persons who were hired in violation of the hiring preference and replace them with the appropriate NANA shareholders. Consequently, the granting of any injunction requested by Mr. Conitz would create substantial fairness issues with respect to NANA, Teck, NANA's shareholders, and job applicants who do not own NANA shares.

12.     I am aware that it took more than two years to resolve the last lawsuit that Mr. Conitz filed against Teck in federal court. If, upon the lifting of a wrongful injunction, Teck is required to make the individuals who are wrongfully denied employment whole, the cost is likely to be between $5,797,000 and $6,166,000, plus interest, assuming that the injunction is in place for not more than two years.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED this _12th_ day of November, 2009.

Jim Somers