BOOK 0055 PAGE 539

WHEREAS, for all purposes of this instrument, unless the context otherwise requires,

(a) all references herein to "Articles", "Sections", "Clauses" or other subdivisions refer to the corresponding Articles, Sections, Clauses and other subdivisions of this instrument; and the words "this instrument", "herein", "hereof", "hereby", "hereunder" and words of similar import refer to this instrument as a whole and not to any particular Article, Section, Clause or other subdivision hereof; and

(b) the term "Event of Default" has the meaning assigned to that term in Section 4.1; and

(c) the term "Mining Documents" shall mean, collectively, the Lease, the NANA Agreement and the AIDA Agreement.

NOW THEREFORE, to secure the payment of the indebtedness described in Section 1.1 hereof, and the performance of the covenants herein, and in consideration of the guaranties by Cominco Ltd., Cominco American Incorporated (on a non-recourse basis), and Cominco Finance Corporation of the Company's Obligations to the Agent (on behalf of the Lenders) under the Credit Agreement and advances that may be made, and other financial accommodations that may be granted, all from time to time, by Cominco Ltd., Cominco American Incorporated, and Cominco Finance Corporation to the Company, the Company by these presents does grant, bargain, sell, mortgage, create a security interest in, pledge, assign, transfer, convey, set over and deliver unto the Trustee, and to his successor in this trust and his assigns, all rights, titles, interests, estates, remedies, powers and privileges vested in the Company or to which the Company may become entitled under the Mining Documents, including all of the Company's interest in Minerals and in any buildings, fixtures, structures, mines or other improvements now or hereafter existing on the real property described below and in the proceeds of any of the foregoing; provided, however, that nothing herein contained shall relieve the Company from the performance or observance of any term, covenant or condition on the Company's part to be performed or observed under the Lease, the NANA Agreement or the AIDA Agreement or impose any liability or responsibility for the performance or observance of any such term, covenant or condition on the Trustee or the Beneficiaries, or for the acts or omissions of the Company under the Lease, the NANA Agreement or the AIDA Agreement, and the Trustee shall not be required to make any inquiry as to the sufficiency of any payment received by him under the Lease, the NANA Agreement

-4-

BOOK 0055 PAGE 540

or the AIDA Agreement, or to present or file any claim, or to take any action, for any amount payable to or otherwise receivable by the Company under the Lease, the NANA Agreement or the AIDA Agreement. Reference is hereby made to the Lease, the NANA Agreement and the AIDA Agreement for a more complete description and designation of the Subject Lands and the rights, titles, interests, estates, remedies, powers and privileges under the Lease and the NANA Agreement. Without limiting the generality of the foregoing, this Deed of Trust shall affect the parcels of real property listed in Schedule 1 attached hereto.

TO HAVE AND TO HOLD said rights, titles, interests, estates, remedies, powers and privileges (collectively, the "Mortgaged Property"), unto the Trustee, his successors in this trust, and unto his successors, heirs, executors, administrators and assigns forever.

BUT IN TRUST, NEVERTHELESS, with power of sale for the benefit and security of the Beneficiaries and upon the trusts and subject to the covenants and conditions hereinafter set forth.

## ARTICLE I

### INDEBTEDNESS SECURED

Section 1.1 <u>Indebtedness Secured</u>. This instrument is made by the Company irrevocably in trust, with the power of sale, to secure (i) any and all indebtedness of the Company with respect to the payment of principal, interest, costs, attorney's fees, or other indebtedness to the Beneficiaries under the Reimbursement Agreement; (ii) any and all indebtedness of the Company to the Beneficiaries for past, present or future financial accommodations (including without limitation advances) extended to the Company by the Beneficiaries; (iii) all indebtedness of the Company to the Beneficiaries for reasonable costs, including attorney's fees, incurred by the Beneficiaries in enforcing the terms of this Deed of Trust or other security for any of the indebtedness secured under this Article I, whether in bankruptcy or similar proceedings or otherwise; and (iv) all other indebtedness of the Company to the Beneficiaries, however created or evidenced, direct or indirect, absolute or contingent, now existing or hereafter arising, and any extensions or renewals thereof.

It is the express intention of the parties hereto to cause this Deed of Trust to secure all future indebtedness and all other indebtedness of the Company to the Beneficiaries and

-5-

Exh. C, Page 5 of 28

BOOK 0055 PAGE 541

the parties agree that this Deed of Trust should be so construed.

## ARTICLE II

### REPRESENTATIONS, WARRANTIES AND COVENANTS

Section 2.1 <u>Representations, Warranties and Covenants</u>. The Company hereby represents, warrants and covenants as follows:

A. <u>Due Incorporation</u>. The Company is a corporation duly incorporated and validly existing and in good standing under the laws of the State of Alaska.

B. <u>No Contravention</u>. The acquisition and ownership by the Company of the Mortgaged Property, the execution and delivery of this instrument and compliance with the provisions hereof do not and will not contravene any requirement of law or any provision of its charter or by-laws or result in the breach or termination of, or constitute a default under, or result in the creation of any lien, charge or encumbrance upon any of its property or assets pursuant to any indenture or other agreement or instrument to which it is a party or by which it or its property may be bound or affected except for those the contravention of which could not reasonably be expected to have a material adverse effect on the Company's performance of its obligations under the Credit Agreement.

C. <u>No Regulatory Jurisdiction</u>. In the execution and delivery of this instrument the Company is not subject to the jurisdiction of any regulatory authority or governmental body.

D. <u>Warranty of Title</u>. At the time of the delivery of this instrument, the Company has legal right and authority to grant, bargain, sell, mortgage, pledge, assign, transfer and convey the Mortgaged Property in the manner and form hereby done or intended; and the Company hereby binds itself, its successors and assigns, to warrant and forever defend all and singular the Mortgaged Property unto the Trustee and his successors and their successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under the Company and not otherwise. This instrument is made with full substitution and subrogation of the Trustee and the Beneficiaries in and to all covenants and warranties by others heretofore

-6-